**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | **Judge** |
| | ) | **Magistrate Judge** |
| **TIRE DISCOUNTERS, INC.,** | ) | |
| | ) | **Jury Demand** |
| **Defendant.** | ) | |

## COMPLAINT

For his Complaint against Defendant Tire Discounters, Inc. ("Defendant"), Plaintiff Christopher Williams ("Mr. Williams") states:

## PARTIES

1.     Mr. Williams formerly worked for Defendant at its facility in LaVergne, Tennessee.

2.     Defendant is an Ohio corporation with its principal place of business at 200 W. 4th Street, Cincinnati, Ohio 45202-2775.  Defendant may be served with process through its registered agent, Registered Agents, Inc., 5810 Shelby Oaks Drive, Suite B, Memphis, Tennessee 38134-7315.

## JURISDICTION AND VENUE

3.     This is an action for damages and equitable relief for unlawful employment practices brought under 42 U.S.C. § 1981 ("Section 1981"), Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA") and/or Tennessee common law.  The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367(a).  Venue is proper under 28 U.S.C. § 1391.

## FACTS

4. Mr. Williams is an African-American individual who worked for Defendant as a Warehouse Associate at its facility in LaVergne, Tennessee, from or about November 2021 until it discharged him on October 26, 2022.

5. During his employment with it, Mr. Williams performed his job in a competent and satisfactory manner and as well or better than Defendant's non-African American employees performed the same and similar duties.

6. On the morning of Tuesday, October 18, 2022, Mr. Williams was discussing with his lead supervisor, Seng Khenesisana, his and coworkers' concerns that supervisor Jakori Boykin-Jones was exhibiting favoritism and creating false write ups for certain employees.

7. Mr. Boykin-Jones overheard Mr. Williams' October 18, 2022, discussion with Mr. Khenesisana and screamed, "Shut the fuck up!"

8. Mr. Williams was unsure who Mr. Boykin-Jones was yelling at and asked him if he was talking to him. Mr. Boykin-Jones responded that he was talking to Mr. Williams.

9. An argument ensued between and Mr. Williams and Mr. Boykin-Jones. Mr. Boykin-Jones then walked out of the trailer in which he was working, pulled a handgun from his jacket pocket, pointed it toward the ground, and stated to Mr. Williams, "Come on!"

10. When Mr. Boykin-Jones pulled the handgun out of his jacket and exclaimed, "Come on," Mr. Williams feared for his safety, well-being, and life. Consequently, Mr. Williams and Mr. Khenesisana immediately left the work area in which Mr. Boykin-Jones was standing with a gun.

11.     As they were leaving the work area, Mr. Williams asked Mr. Khenesiana if he had seen Mr. Boykin-Jones pull out the handgun.  Mr. Khenesiana confirmed that he had and advised Mr. Williams to call the police.

12.     Mr. Williams did as Mr. Khenensiana instructed him to do and reported Mr. Boykin-Jones' threatening and aggravated assault of him with a handgun to the LaVergne Police Department.

13.     In addition to reporting Mr. Boykin-Jones' aggravated assault of him to the LaVergne police, Mr. Williams reported the above facts to corporate Defendant's Corporate Human Resources Department in Cincinnati, Ohio, and its Manager of Supply Chain Operations, Jason Felts, the next day, on October 19, 2022.

14.     Upon his reporting Mr. Boykin-Jones' threatening and aggravated assault of him with a handgun to Mr. Felts, Defendant suspended Mr. Williams from work on October 19, 2022.

15.     One week later, on October 26, 2022, Defendant informed Mr. Williams that it was discharging him for an alleged "violation of company policy."

16.     Mr. Williams asked Defendant what policy he had violated but no one would tell him.

17.     When it discharged him, Defendant promptly replaced Mr. Williams with Chris Monroe, a Caucasian male whom Mr. Khenesisana was directed to train for Mr. Williams' job.

18.     Defendant's alleged reason for discharging Mr. Williams was a pretext for retaliation and/or race discrimination.  Its asserted reason was false; did not actually motivate the discharge; was unreasonable in the circumstances; and was insufficient to motivate the discharge in light of the conduct of other similarly situated, non-African American employees who did not

report, oppose, and refuse to remain silent about serious criminal conduct by Defendant's supervisor in the workplace.

19.     In discharging him for allegedly violating an unstated and unspecific "company policy," Defendant treated Mr. Williams differently and less favorably in the terms, conditions, and privileges of employment than similarly situated employees who had not opposed, reported, and refused to remain silent about illegal activity as well as non-African American employees who engaged in conduct of comparable seriousness or who committed the same, similar, and worse alleged violations of company policy.

20.     For example, a Caucasian co-worker, Robert Parchon, carried a loaded and exposed firearm and large knives at work in Defendant's LaVergne facility. Mr. Parchon also frequently and repeatedly violated Defendant's attendance policies and rules.

21.     Defendant knew about Mr. Parchon's infractions and policy violations because it eventually gave him multiple write ups after multiple employees complained to management and corporate HR about them. Defendant did not discharge Mr. Parchon.

22.     Defendant's local management in LaVergne also knew that Mr. Boykin-Jones, who is multiracial, carried a handgun at work before Mr. Williams knew and reported it to the police and to corporate HR.

23.     Mr. Boykin-Jones advised the LaVergne police when they interviewed him in connection with Mr. Williams' police report that he (Boykin-Jones) carried his loaded handgun at work "for protection."

24.     Despite his admittedly carrying a loaded gun at work and pulling it out and threatening Mr. Williams with it at work on October 18, 2022, in Mr. Khenesisana's presence, Defendant did not discharge Mr. Boykin-Jones.

4

25.     One or more of Defendant's employees at the LaVergne facility resigned their employment in 2022 because they did not feel safe working there due to the presence of firearms and Defendant's failure to take corrective or remedial action in response to employee complaints about guns in its workplace.

26.     Defendant further allowed another Caucasian male employee named Blake to repeatedly violate its attendance and drug policies and did not discharge him.

27.     Mr. Williams did the right thing by promptly reporting supervisor Boykin-Jones' threatening him with a gun at work to the LaVergne Police Department on October 18, 2022, and to corporate Human Resources the next day.  He reasonably believed that supervisor Boykin-Jones' conduct violated Tenn. Code Ann. § 39-13-102, among other similar laws, and in good faith reported it.  He was suspended from work on October 19, 2022, and discharged just one week later, on October 26, 2022.

28.     Defendant's retaliatory conduct is likely to chill and deter other employees from opposing, reporting, and refusing to remain silent about illegal and potentially fatal activity occurring in its workplace.

29.     As described above, Defendant retaliated against Mr. Williams for opposing, reporting, and refusing to remain silent about activity that he reasonably believed to be illegal—*i.e.*, being threatened and assaulted at work with a handgun by a supervisor, a criminal offense, in violation of the TPPA and/or Tennessee common law.

30.     As described above, Defendant discriminated against Mr. Williams in the terms, conditions, and privileges of employment and subjected him to disparate treatment because of his race, in violation of Section 1981 and the THRA.

31.     Defendant's conduct as described in this Complaint was intentional, willful, malicious and/or recklessly indifferent to Mr. Williams's protected rights, entitling him to punitive damages under the TPPA and/or Tennessee common law and Section 1981.

32.     As a direct result of Defendant's retaliatory and discriminatory conduct, Mr. Williams has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

## RELIEF REQUESTED

WHEREFORE, Mr. Williams respectfully requests:

1.     A jury trial;

2.     Back pay and damages for lost benefits;

3.     Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4.     Front pay and damages for lost benefits;

5.     Punitive damages;

6.     Attorneys' fees, costs and litigation expenses;

7.     Prejudgment interest and, if applicable, post judgment interest; and

8.     Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,


s/Douglas B. Janney III
Douglas B. Janney III (TN BPR No. 19112)
Law Office of Douglas B. Janney III
5115 Maryland Way
Brentwood, Tennessee 37027
(615) 742-5900
doug@janneylaw.com

*Attorney for Plaintiff*